**EXHIBIT "A"**



# Master Agreement

**Usherwood**
OFFICE TECHNOLOGY
1005 W Fayette St, Syracuse NY 13204

MASTER AGREEMENT NO.:

| CLIENT ("you" or "your") | | |
|---|---|---|
| FULL LEGAL NAME: | The College of Saint Rose | FEDERAL TAX ID#: |
| ADDRESS: | 432 Western Avenue, Albany NY 12203 | |

## MASTER AGREEMENT

The parties anticipate the terms of this Master Agreement shall be incorporated into and constitute a part of one or more Schedules to Master Agreement entered into between Client and Owner (each a "Schedule"). As used herein, "Agreement" refers to an individual Schedule which incorporates this Master Agreement and "Equipment" refers to the equipment and/or software referenced on an individual Schedule.

### ADDITIONAL TERMS AND CONDITIONS

**1. AGREEMENT.** You want us to now provide you the Equipment, together with all replacements, parts, repairs, additions and accessions incorporated therein or attached thereto excluding equipment marked as not financed under the Schedule and you unconditionally agree to pay us the amounts set forth on such Schedule each period by the due date. The Agreement will begin on the date the Equipment is delivered to you or any later date we designate. If we designate a later commencement date, you agree to pay us an additional amount equal to the periodic payments due under this Agreement prorated for the period between the date the Equipment is delivered to you and the commencement date. We may charge you a one-time origination fee. If any amount payable to us is more than five days late, you will pay a late charge equal to: 1) the greater of ten (10) cents for each dollar overdue or twenty-six dollars ($26.00); or 2) the highest lawful charge, if less. Any security deposit will be commingled with our assets, will not earn interest, and will be returned at the end of the term, provided you are not in default. We may charge you a fee for filing, searching and/or titling costs required under the Uniform Commercial Code (UCC) or other laws. If for any reason your check is returned for nonpayment, you will pay us a bad check charge of $30 or, if less, the maximum charge allowed by law. The payment will be adjusted proportionately upward or downward: (1) by up to 10% to accommodate changes in the actual Equipment cost; (2) if the shipping charges or taxes differ from the estimate given to you; and (3) to comply with the tax laws of the state in which the Equipment is located.

**2. NET AGREEMENT. THE AGREEMENT IS NON-CANCELABLE FOR THE ENTIRE AGREEMENT TERM. YOU AGREE THAT YOU ARE UNCONDITIONALLY OBLIGATED TO PAY ALL AMOUNTS DUE UNDER THE TERMS OF THE AGREEMENT FOR THE ENTIRE TERM. YOU ARE NOT ENTITLED TO REDUCE OR SET-OFF AGAINST AMOUNTS DUE UNDER THE AGREEMENT FOR ANY REASON.**

**3. EQUIPMENT USE.** You will keep the Equipment in good working order, free and clear of all liens and claims, use it for business purposes only and not modify or move it from its initial location without our consent. If we have entered into a separate arrangement with you for maintenance, service, supplies, support, etc. with respect to the Equipment, payments under the Agreement may include amounts owed under that arrangement, which amounts may be invoiced as one payment for your convenience. You agree that you will look solely to us for performance under any such arrangement and for the delivery of any applicable supplies. We will have the right, at any reasonable time, to inspect the Equipment and any documents relating to its use, maintenance and repair.

**4. SOFTWARE/DATA.** Except as provided in this paragraph, references to "Equipment" include software included as part of, or installed on, the Equipment. We do not own the software and cannot transfer any interest in it to you. We are not responsible for the software and have no rights or obligations under any related license agreement. You agree that you will look only to the publisher, licensor, or other third parties, if any, who actually granted you your right to use the software to determine those rights. **You are solely responsible for protecting and removing any confidential data/images stored on the Equipment prior to its return for any reason.**

**5. LIMITATION OF WARRANTIES. EXCEPT TO THE EXTENT THAT WE HAVE PROVIDED YOU A WARRANTY IN WRITING, WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. YOU CHOSE ANY/ALL THIRD-PARTY SERVICE PROVIDERS BASED ON YOUR JUDGMENT. YOU MAY CONTACT US OR THE MANUFACTURER FOR A STATEMENT OF THE WARRANTIES, IF ANY, THAT THE MANUFACTURER IS PROVIDING. WE ASSIGN TO YOU ANY WARRANTIES GIVEN TO US.**

**6. ASSIGNMENT.** You may not sell, assign, or sublease the Equipment or the Agreement without our written consent. Without our prior written consent, which will not be unreasonably withheld, you shall not reorganize or merge with any other entity or transfer all or a substantial part of your ownership interests or assets. We may sell or assign the Agreement and our rights in the Equipment, in whole or in part, to a third party without notice to you. **You agree that if we do so, our assignee will have our assigned rights under the Agreement, but none of our obligations (including but not limited to any obligation to provide maintenance, supplies or support for the Equipment), and will not be subject to any claim, defense, or set-off that may be assertable against us or anyone else.**

**7. LAW/FORUM.** You agree that the Agreement and any claim related to the Agreement shall be governed by the internal laws of the state in which our (or, if we assign the Agreement, our assignee's) principal place of business is located and any dispute concerning the Agreement will be adjudicated in a federal or state court in such state. You hereby consent to personal jurisdiction and venue in such courts and waive transfer of venue. **Each party waives any right to a jury trial.**

### CLIENT'S AUTHORIZED SIGNATURE

BY SIGNING THIS PAGE, YOU REPRESENT TO US THAT YOU HAVE RECEIVED AND READ THE ADDITIONAL TERMS AND CONDITIONS APPEARING ON THE SECOND PAGE OF THIS TWO-PAGE AGREEMENT. THIS AGREEMENT IS BINDING UPON OUR ACCEPTANCE HEREOF.

| The College of Saint Rose (As Stated Above) | X Deb L Bell | Debra Lee Polley | 7/30/2020 |
|---|---|---|---|
| CLIENT | SIGNATURE | Vice President for Finance & Admin<br>PRINT NAME & TITLE | DATE |

### OWNER ("WE", "US", "OUR")

| Usherwood Office Technology | [signature] | Andrew Flamik, VP Finance | 7/31/2020 |
|---|---|---|---|
| OWNER | SIGNATURE | PRINT NAME & TITLE | DATE |

1005 W. Fayette St., Syracuse, NY 13204-2860

**8. LOSS OR DAMAGE.** You are responsible for any damage to or loss of the Equipment. No such loss or damage will relieve you from your payment obligations under the Agreement. Any insurance proceeds received relating to insurance you obtain will be applied, at our option, to repair or replace the Equipment, or to pay us the remaining payments due or to become due under this Agreement, plus our booked residual, both discounted at 2% per annum. Except for claims, losses, or damages caused by our gross negligence or willful misconduct, you agree to indemnify and defend us and our assignee, if applicable, against any claims, losses, or damages, including attorney fees, in any way relating to the Equipment or data stored on it. In no event will we be liable for any consequential or indirect damages.

**9. INSURANCE.** You agree to maintain commercial general liability insurance acceptable to us and to include us as an additional insured on the policy. You also agree to: 1) keep the Equipment fully insured against loss at its replacement cost, with us named as lender's loss payee; and 2) provide proof of insurance satisfactory to us no later than 30 days following the commencement of the Agreement, and thereafter upon our written request. If you fail to maintain property loss insurance satisfactory to us and/or you fail to timely provide proof of such insurance, we have the option, but not the obligation, to do so as provided in either (A) or (B) as follows, as determined in our discretion: (A) We may secure property loss insurance on the Equipment from a carrier of our choosing in such forms and amounts as we deem reasonable to protect our interests. If we secure insurance on the Equipment, we will not name you as an insured party, your interests may not be fully protected, and you will reimburse us the premium which may be higher than the premium you would pay if you obtained insurance, and which may result in a profit to us through an investment in reinsurance. If you are current in all of your obligations under the Agreement at the time of loss, any insurance proceeds received relating to insurance we obtain pursuant to this subsection (A) will be applied, at our option, to repair or replace the Equipment, or to pay us the remaining payments due or to become due under the Agreement, plus our booked residual, both discounted at 2% per annum. (B) We may charge you a monthly property damage surcharge of up to .0035 of the Equipment cost as a result of our credit risk administrative costs or other costs, as would be further described on a letter from us to you. We may make a profit on this program. NOTHING IN THIS SECTION WILL BE RELIEVE YOU OF YOUR RESPONSIBILITY FOR LIABILITY INSURANCE ON THE EQUIPMENT. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to loss or damage to the Equipment.

**10. TAXES/OWNERSHIP.** You will pay when due, either directly or by reimbursing us, all taxes and fees relating to the Equipment and the Agreement. If we pay any taxes or other expenses that you owe hereunder, you agree to reimburse us when we request and to pay us a processing fee for each expense or charge we pay on your behalf. Sales or use tax due upfront will be payable over the term with a finance charge. Unless the Agreement includes a $1-purchase option, we own the Equipment (excluding any software). If the Agreement includes a $1-purchase option, you acknowledge that the Agreement shall be deemed to be a conditional sales contract, any ownership we have in the Equipment will be deemed transferred to you upon the commencement of the applicable Schedule and you agree to file any required personal property tax returns relating to the Equipment.

**11. END OF TERM. At the end of the term of the Agreement (or any renewal term) (the "End Date"), the Agreement will renew month to month unless a) you provide us written notice, at least 30 days prior to the End Date (or at least 30 days before the end of any renewal term), of your intent to return the Equipment, and b) you timely return the Equipment to the location designated by us, at our expense.** If the returned Equipment is not immediately available for use by another without need of repair, you will reimburse us for all repair costs. If the Agreement includes a purchase option and you are not in default on the End Date, you may purchase the Equipment from us "AS IS" for the purchase option price. If the Agreement includes a $1-purchase option, you will be deemed to have exercised your option to purchase the Equipment as of the commencement date of the applicable Schedule. You cannot pay off the Agreement or return the Equipment prior to the End Date without our consent. Unless the Agreement includes a $1-purchase option, if we consent to an early prepayment, we may charge you, in addition to other amounts owed, an early termination fee equal to 5% of the price of the Equipment.

**12. DEFAULT AND REMEDIES.** You will be in default if (a) you do not pay any payment or other sum due to us or any other person when due or if you fail to perform in accordance with the covenants, terms and conditions of the Agreement or any other agreement with us or any of our affiliates or any material agreement with any other entity, (b) you make or have made any false statement or misrepresentation to us, (c) you or any guarantor dies, dissolves, terminates existence or files bankruptcy, (d) there has been a material adverse change in your or any guarantor's financial, business or operating condition, or (e) any guarantor defaults under any guaranty for this Agreement. If you are ever in default, at our option, we can terminate this Agreement and we may require that you return the Equipment to us at your expense and pay us: 1) all past due amounts and 2) all remaining payments for the unexpired term, plus our booked residual, both discounted at 2% per annum. We may also use all other legal remedies available to us, including disabling or repossessing the Equipment and requiring you to stop using any financed software. You agree to pay all our costs and expenses, including reasonable attorney fees, incurred in enforcing the Agreement. You also agree to pay interest on all past due amounts, from the due date, at 12% per year. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing any rights at a later time. If interest is charged or collected in excess of the maximum lawful rate, we will refund such excess to you, which will be your sole remedy.

**13. UCC.** You grant us a security interest in the Equipment to secure all amounts you owe us under any agreement with us and you authorize us to file a financing statement to show our interest. If we assign rights in the Agreement for financing purposes, you agree that the Agreement, in the hands of our assignee, is, or shall be treated as, a "Finance Lease" as that term is defined in Article 2A of the Uniform Commercial Code ("UCC"). **You agree to forgo the rights and remedies provided under sections 507-522 of Article 2A of the UCC.**

**14. MISCELLANEOUS.** The Agreement is the entire agreement between you and us relating to our providing and your use of the Equipment and supersedes any prior representations or agreements, including any purchase orders. Amounts payable under the Agreement may include a profit to us. The parties agree that this Agreement and any related documents hereto may be authenticated by electronic means. The parties agree that the original hereof for enforcement and perfection purposes, and the sole "record" constituting "chattel paper" under the UCC, is the paper copy hereof bearing (i) the original or a copy of either your manual signature or an electronically applied indication of your intent to enter into this Agreement, and (ii) our original manual signature. You agree not to raise as a defense to the enforcement of this Agreement or any related documents that you executed or authenticated such documents by electronic or digital means or that you used facsimile or other electronic means to transmit your signature on such documents. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign this Agreement or any related documents hereto manually. If a court finds any provision of this Agreement unenforceable, the remaining terms of this Agreement shall remain in effect. You authorize us to either insert or correct the Agreement number, legal name, address, Federal Tax ID #, serial numbers, model numbers, beginning date, and signature date. All other modifications to the Agreement must be in writing signed by each party. Within 30 days after our request, you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. You will not change your state of organization, headquarters or residence without providing prior written notice to us so that we may amend or file a new UCC-1. You will notify us within 30 days if your state of organization revokes or terminates your existence.



**Usherwood**
OFFICE TECHNOLOGY

1005 W Fayette St, Syracuse NY 13204

**Schedule to Master Agreement**
(Straight Lease)

| MASTER AGREEMENT NO. | APPLICATION NO. | AGREEMENT/SCHEDULE NO. |
|---|---|---|
|  |  |  |

### CLIENT ("YOU" or "YOUR")

FULL LEGAL NAME: **The College of Saint Rose**

ADDRESS: **432 Western Avenue, Albany NY 12203**

### MASTER AGREEMENT

REFERS TO THE AGREEMENT BETWEEN CLIENT AND OWNER IDENTIFIED IN OWNER'S RECORDS BY THE MASTER AGREEMENT NO. ABOVE.

### DESCRIPTION OF EQUIPMENT

MAKE, MODEL NUMBER, INCLUDED ACCESSORIES & SERIAL NO.     ☑ SEE ATTACHED EQUIPMENT SCHEDULE

EQUIPMENT LOCATION: **(As Stated Above)**

### PAYMENT TERMS UNDER THIS SCHEDULE ONLY

TERM IN MONTHS: **75**   MONTHLY   BASE PAYMENT AMOUNT: $ **3 @ $0, 72 @ $20,227** (PLUS TAX)

PURCHASE OPTION:   ☑ FAIR MARKET VALUE ☐ $1.00 (PURCHASE OPTION WILL BE FAIR MARKET VALUE IF NO BOX IS CHECKED)

### AGREEMENT

This Schedule to Master Agreement ("Schedule"), together with the preprinted terms of the Master Agreement (as amended), constitutes an agreement between Client and Owner with respect to the equipment referenced herein (or on the attached Equipment Schedule), separate and distinct from any other Schedule to Master Agreement entered into between Client and Owner pursuant to the Master Agreement. Client agrees to be bound by the terms of this Schedule, which includes the preprinted terms of the Master Agreement (as amended), and agrees this Schedule shall constitute an "Agreement" as such term is used in the Master Agreement. The parties agree that: (i) this Schedule and any related documents hereto may be authenticated by electronic means. The parties agree that the original of this Schedule for enforcement and perfection purposes, and the sole "record" constituting "chattel paper" under the UCC is the paper copy hereof bearing (i) the original copy of either your manual signature or an electronically applied indication of your intent to enter into this Schedule, and (ii) our original manual signature. You agree not to raise as a defense to the enforcement of this Schedule or any related documents that you executed or authenticated such documents by electronic or digital means or that you used facsimile or other electronic means to transmit your signature on such documents. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign this Schedule or any related documents hereto manually. If any provision in this Schedule conflicts with a provision in the Master Agreement, the provision in this Schedule shall control. This Schedule shall commence on the date of our acceptance.

### CLIENT'S AUTHORIZED SIGNATURE

ONCE YOU SIGN THIS SCHEDULE AND OWNER ACCEPTS IT, THIS SCHEDULE WILL BE NON-CANCELABLE FOR THE FULL TERM.

(As Stated Above) | X _[signature]_ | Debra Lee Tolley, Vice President for Finance + Admin | 7/30/2020
CLIENT | SIGNATURE | PRINT NAME & TITLE | DATE

### OWNER ("WE", "US", "OUR")

**Usherwood Office Technology**
Canon Financial Services, Inc.
as agent for and on behalf of
OWNER | _[signature]_ SIGNATURE | Scott Littlefield   Sr. Documentation Manager | 8/28/2020
 |  | PRINT NAME & TITLE | DATE

### CERTIFICATE OF DELIVERY AND ACCEPTANCE

The Client hereby certifies that all the Equipment 1) has been received, installed, and inspected, and 2) is fully operational and unconditionally accepted.

(As Stated Above) | Patricia Buckley _[signature]_ | Patricia Buckley, Director of Purchasing + Auxiliary Services | 8/26/2020
CLIENT | SIGNATURE | PRINT NAME & TITLE | DATE

x.024031-UP02Straight_0219



**Usherwood**
OFFICE TECHNOLOGY

1005 W Fayette St, Syracuse NY 13204

# EQUIPMENT SCHEDULE

AGREEMENT NO.: _____

| DESCRIPTION OF EQUIPMENT | |
|---|---|
| MAKE, MODEL NUMBER & INCLUDED ACCESSORIES | SERIAL NUMBER |
| Canon C3730i (Qty 14) | |
| Canon 4725i (Qty 45) | |
| Canon 525iF (Qty 15) | |
| Canon C257iF (Qty 2) | |
| Canon C256iF (Qty 3) | |
| Canon 4745i (Qty 1) | |
| Canon imagePRESS C710 (Qty 2) | |
| Canon varioPRINT DP 115 (Qty 1) | |
| Canon 6565i (Qty 1) | |
| Canon PRO TX4000 MFP 36" Wide Format (Qty 1) | |
| Quadient 1X-7 Pro Mailing System (Qty 1) | |
| HP E57540dn Color MFP (Qty 2) | |
| HP E50145dn Mono Printer (Qty 29) | |
| HP E55040dn Color Printer (Qty 4) | |

**VERIFICATION**
The undersigned hereby verifies that the information on this Schedule is complete and correct. The undersigned also acknowledges having received a copy of this Schedule.

The College of Saint Rose — CLIENT
X _[signature]_ SIGNATURE
Debra Lee Polley — PRINT NAME & TITLE
VP for Finance + Admin
8/26/2022 — DATE

x.024031-UP0205_0219